## Shonk *versus* Brown *et al.*

1. A devise was " to my daughter Ann, wife of C., and I will and bequeath one share to the sole and separate use of her and her lawful heirs, so that my daughter Ann cannot sell or convey the same, but to descend to her lawful heirs, and so that the said real property cannot be taken, sold, or rented or leased from her, or her heirs, to pay any judgment or demand that may be against her said husband." *Held*, the estate was vested in her for her sole and separate use, freed from the debts of her husband, and without power to convey during coverture.

2. The testator died after the Act of 1848 (Married Women). This act did not empower her to convey, although no trustee was named in the will.

3. The want of a trustee does not change the nature of the trust which is upheld in equity as well without as with a trustee.

4. The change produced by the Act of 1848 had relation to the wife's right of property, not to the power she can exercise over it.

5. Cummings's Appeal, 1 Jones 272, explained.

[Shonk v. Brown.]

6. The devisee and her husband, after the Act of 1848, conveyed the devise in fee. *Held*, that the purchaser took no title; such was the effect of the will without regard to the express restriction in it on her power of sale.

7. On her death the property vested absolutely in her heirs, without any moral obligation on them to confirm the conveyance.

8. The Act of April 22d 1863 (to validate conveyances of married women), did not validate the conveyance. That act is an arbitrary and unjust exercise of power.

9. When a married woman has the title and power to convey, but is restricted as to the manner, the legislature may remove the restriction; but not where there is a want of power to convey in any mode.

10. Retrospective laws may be supported when they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted.

March 12th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Luzerne county*: No. 301, to January Term 1869.

This was an action of ejectment brought January 30th 1866, by Aaron Brown and Esther his wife, in her right; D. D. Headley and Jane his wife, in her right; John Gould, guardian of Elizabeth Atherton, in her right; and Aaron Brown, in his own right, against John J. Shonk, for a lot of ground situate in the township of Plymouth, county of Luzerne, containing 142 acres 24 perches.

The action was for the recovery of an undivided seventh part of the coal and the undivided eleventh part of the surface of the land, which is described in the writ and of which Jacob Gould died seised. By his will, dated June 14th 1834, Gould devised as follows :—    *        *        *

" Fourthly. I give and bequeath unto my seven children, four of which are sons, the eldest is John Gould, and Thomas Gould and Samuel Gould and Jacob Gould, and my three daughters, Charity Pringle, wife of Benjamin Pringle, Ann Atherton, wife of Caleb Atherton, and Elizabeth Rickard, wife of John Rickard, all my real estate to be divided into eleven shares, equal in value. To my son, John Gould" (and so to his other sons) " and to his lawful heirs, I will and bequeath two shares. To my daughter, Charity Pringle, wife of Benjamin Pringle, I will and bequeath one share, &c." (in the same manner as Ann Atherton's). " To my daughter, Ann Atherton, wife of Caleb Atherton, I will and bequeath one share to the sole and separate use of her and her lawful heirs, so that my daughter Ann cannot sell or convey the same, but to descend to her lawful heirs, and so that the said real property cannot be taken, sold or rented or leased from her or her heirs, to pay any judgment or demand that may be against her said husband.

" To my daughter, Elizabeth Rickard," (as Ann Atherton's). * *

" Sixthly. I will and bequeath unto my seven children, John

11 P. F. SMITH—21

[Shonk *v.* Brown.]

Gould, Thomas Gould, Samuel Gould, Jacob Gould, Charity Pringle, Ann Atherton and Elizabeth Rickard and their lawful heirs, all the coal-mines, which are now or may hereafter be found on any part of my landed property, each of my children or their legal representatives to hold one-seventh part, or each to share alike in the interest or profit thereof, and that there shall be a reserve made in the division of my real or landed property sufficient for all necessary roads to go to and from said coal-mines, and sufficient land for to deposit all coal and coal-dirt, and the like that is necessary, and that each one shall have an equal right to dig or mine coal at any time, and each one shall be at their proper expense of keeping said coal mine or mines in repair, according to what coal they may dig or mine, and it is to be understood that neither of my children or their lawful heirs or representatives shall have a right in any one year to dig or mine more than two ark-loads of coal more than the other heirs, and when any one shall dig or mine more coal, they shall pay unto the other heirs, what would be over and above their share or part according to the price of coal not less than eighteen and a half cents, and not more than twenty-five cents per ton, and it is further understood that the coal-beds or mines are to be worked in a workmanlike manner, so as not to damage the said mines or coal-beds, the one who does the same shall pay to the others all reasonable damages, and the others shall in this case have a right to mine or dig more coal if necessary than two ark-loads, and a sufficient to pay all reasonable damages, or put the said coal-mines in good order to work.

"Seventhly. As it respects the division of all my coal-mines and the interest therein, which I have given and bequeathed unto my three daughters,—Charity Pringle, Ann Atherton and Elizabeth Rickard,—and their legal heirs, that they shall hold their interest in each and every; and under each and every restrictions, as I have devised my real and personal property to them the same as though it was particularly mentioned, reference being had to the fourth article of this my will, with this difference: each daughter is made equal to each son, and holding equal right and interest, each having one-seventh part or share in the coal mine or mines, with all the other privileges of roads," &c.

The testator on the 29th of September 1847 added to his will a codicil, as follows:—"I, Jacob Gould, the within-named testator, do hereby make and publish this codicil to be added to my last will and testament, in manner following, to wit: Whereas, since the foregoing will was made, I have purchased more real estate, to wit, &c. * * My will and desire is, that in the division of my real estate among the children, that my son Jacob shall have the farm above mentioned, and in the valuation, if said farm should be considered worth more or less than two shares of my real estate, that he pay to the other heirs, or receive from them to

[Shonk *v*. Brown.]

make his two shares equal with the others.   I hereby give and bequeath unto my children hereinbefore named all the real estate that I am now seised of, as well as all other real estate that I may hereafter purchase or become seised of at my decease.   And it is also my desire and intentions in this my last will and testament not to invest the fee simple of my real estate in any said sons and daughters, my said several sons, to wit: John, Thomas and Jacob cannot dispose or alienate, as well as my daughters, any part or parcel of real estate, all of which is to descend to their respective heirs and legal representatives." * *

The testator died March 9th 1849.   The will and codicil were proved on the 21st of the same month.

On the 2d of March 1854 Ann Atherton with her husband conveyed all her estate under the will to Charles Dorrance. Dorrance went into possession.

Ann Atherton died March 13th 1856; her husband died some years after her.   Dorrance continued in possession until April 1864, when he conveyed to John J. Shonk, the defendant.   The plaintiffs are the children and heirs of Ann Atherton.

The questions were, what estate was vested in Ann Atherton by her father's will, and whether she had power to convey her estate.

On the trial it was agreed that the court should charge the jury to find for the plaintiffs, reserving the questions arising under the will of Jacob Gould and the deed of Ann Atherton.   There was a verdict accordingly.   The court (Conyngham, P. J.) afterwards entered judgment on the reserved questions for the plaintiffs for one-eleventh undivided part of the surface of the land, and for one-seventh undivided part of the underlying coal, and for the defendant for the remainder of the tract.

In his opinion Judge Conyngham held that Mrs. Atherton took a fee simple in the devise, and that her conveyance to Dorrance was ineffectual to pass the estate, it having been devised to her for her sole and separate use, with restriction as to her power of sale; and that the Act of April 2d. 1863, § 1, Pamph. L. 533, Purd. 1306, pl. 2, did not validate the sale.

The defendant took a writ of error, and assigned for error the entry of the judgment as above stated.

*J. V. Darling* and *E. S. Osborne* (with whom were *G. B. Nicholson* and *E. P. Darling*), for plaintiff in error.—1. The estate being a fee simple in Mrs. Atherton, was it so limited by the will that she could not convey it?   There can be no restraint of alienation: Walker *v*. Vincent, 7 Harris 369.   " Separate estate of a married woman" means an estate held by some one in trust for her.   In Todd's Appeal, 12 Harris 429, and the cases in Pennsylvania, the estate has been limited to a trustee with two

exceptions: Lancaster *v.* Dolan, 1 Rawle 248; Pullen *v.* Rainhard, 1 Whart. 514; Thomas *v.* Folwell, 2 Id. 11; Smith *v.* Starr, 3 Id. 66; Hamersley and Wife *v.* Smith, 4 Id. 126; Hoover *v.* Samaritan Society, Id. 445; Wallace *v.* Coston, 9 Watts 137; Lyne *v.* Crouse, 1 Barr 111; Rogers *v.* Smith, 4 Id. 93. The exceptions are Cochran *v.* O'Hern, 4 W. & S. 95; Wetherill *v.* Mecke, Brightly 135. Other cases hold that a conveyance by husband and wife of her separate estate, where there is no trustee, is valid: Heath *v.* Knapp, 4 Barr 228; Dull *v.* Heath, 7 Id. 85.

This doctrine was held even after the Married Woman's Act of April 11th 1848, Pamph. L. 536, Purd. 699, pl. 11; Cumming's Appeal, 1 Jones 272; Goodyear *v.* Rumbaugh, 1 Harris 480; Faries's Appeal, 11 Id. 29; Haines *v.* Ellis, 12 Id. 253. The law as then declared thus stood when the conveyance was made to Dorrance. It could not be altered afterwards so as to affect that conveyance: Menges *v.* Dentler, 9 Casey 495. The Act of 1863, *supra*, to remove the unsettling of titles under the decision in Wright *v.* Brown, 8 Wright 224, validated conveyances theretofore made by married woman having a separate estate and no trustee. The legislature has validated many transactions which otherwise would have been invalid, and the legislature has been sustained in this court: Barnet *v.* Barnet, 15 S. & R. 72; Tate *v.* Stooltzfoos, 16 Id. 35; Bleakney *v.* Farmers' and Mechanics' Bank, 17 Id. 64; Mercer *v.* Watson, 1 Watts 330; Journeay *v.* Gibson, 6 P. F. Smith 57; Greenough *v.* Greenough, 1 Jones 494; O'Conner *v.* Warner, 4 W. & S. 227.

*S. T. Woodward* and *G. M. Harding,* for defendants in error.— The restraint of alienation was good: McWilliams *v.* Nisly, 2 S. & R. 513; 1 Fearne on Con. Rem. 256. They referred on this point and examined, Lancaster *v.* Dolan and the other cases cited in connection with it by the plaintiff in error. The Act of 1848 does not change the power of married women over their separate estates. This act does not apply to this will, its date being before the passage of the act, and it must speak as of its date: 1 Jarman on Wills 292; Ex parte Earl of Ilchester, 7 Vesey 369; Earl of Albemarle *v.* Rogers, 2 Id. 482; Moely *v.* Moely, 5 Id. 248; Mullock *v.* Souder, 5 W. & S. 198.

A retroactive effect will not be given to a statute so as to affect contracts or property: Dwarr on Statutes 681; Ashburnham *v.* Bradshaw, 2 Atk. 36; Attorney-General *v.* Lloyd, 3 Id. 551; Same *v.* Andrews, 1 Vesey, Sr. 225; Martindale *v.* Warner, 3 Harris 471; Price *v.* Taylor, 4 Casey 96; Gable *v.* Daub, 4 Wright 220; Mullen *v.* McKelvy, 5 Watts 399; Murry *v.* Murry, 6 Id. 353; Kurtz *v.* Saylor, 8 Harris 205.

The Act of 1848 does not affect the construction of this will:

[Shonk v. Brown.]

Wright v. Brown, *supra*; McMullin v. Beatty, 6 P. F. Smith 395; Townsend v. Maynard, 9 Wright 200. The Act of 1863 is unconstitutional, because it attempts to alter testamentary dispositions of property by subsequent legislation: Gilmore v. Shooter, 2 Mod. 310; Ashburnham v. Bradshaw, *supra*; Mullen v. McKelvy, 5 Watts 399; Murry v. Murry, 6 Id. 357; Kurtz v. Saylor, 8 Harris 205; Bradford's Will, 1 Parsons 168; Greenough v. Greenough, *supra*; Snyder v. Bull, 5 Harris 54; McCarty v. Hoffman, 11 Id. 507; Brown v. Hummel, 6 Barr 90; and Ervine's Appeal, 4 Harris 256. Because it is the exercise of judicial power: Const. of Penna., Art. 5, § 1; Greenough v. Greenough, *supra*; Presbyterian Corporation v. Wallace, 3 Rawle 132; O'Conner v. Warner, 4 W. & S. 223; Lambertson v. Hogan, 2 Barr 22; Dale v. Medcalf, 9 Id. 108; De Chastellux v. Fairchild, 3 Harris 18; McCabe v. Emerson, 6 Id. 111; Boom Co. v. Dodge, 7 Casey 285; Menges v. Dentler, 9 Id. 495; and Reiser v. The Saving Fund, 3 Wright 137. Because it is against the bill of rights: Const. of Penna., Art. 9, § 9, 11; Norman v. Heist, 5 W. & S. 171; Chaffee v. Michaels, 7 Casey 283.

The opinion of the court was delivered, May 11th 1869, by

AGNEW, J.—Two questions are presented for our decision— one as to the power of Mrs. Ann Atherton to convey her separate estate, and the other as to the validity of the curative Act of 1863. The parties having united in treating the estate of Mrs. Atherton under the will of Jacob Gould as a fee simple, it is unnecessary to examine the will in this respect. The effect of the devise was to vest the estate for her sole and separate use, freed from the debts of her husband, and without power to convey during coverture. The will took effect after the passage of the Married Woman's Act of 1848, and it is thought this enabled her to convey, there being no trustee named in the will. But the want of a trustee does not change the nature of the trust, which is upheld in equity as well without as with a trustee: McKennan v. Phillips, 6 Wharton 571, and authorities cited on p. 575; Jamison v. Brady, 6 S. & R. 466; Cochran v. O'Hern, 4 W. & S. 95; Heath v. Knapp, 4 Barr 228; Wright v. Brown, 8 Wright 238. That the Act of 1848 produced a radical change in the condition of a married woman is undoubted as to the title to her estate. This had relation to her right of property, not to the powers she can exercise over it. At common law the husband was the absolute owner of her chattels and the profits of her real estate, and might by reduction to possession become owner of her choses in action. The Act of 1848 changed this rule and vested the title entirely in the wife. It was this title which the husband sought to control in Cummings's Appeal, 1 Jones 272, where Judge Rogers used the language often criticised, that a married woman must hereafter be consi-

[Shonk *v.* Brown.]

dered a *feme sole* in regard to her estate, and may dispose of it by will or otherwise as a *feme sole*. Taking the language as it should be, in reference to the subject he was discussing, to wit, her title and her husband's power over it, the language is not so obnoxious to criticism as it is sometimes supposed. Certainly it does not countenance the use sought to be made of it in this case, as favoring her right to sell an estate settled to her separate use without a power of sale. At the time of her deed to Mr. Dorrance in 1854, it had not been said by this court that the Act of 1848, liberated an estate settled upon a married woman to her separate use without a power of sale, from the limitations of the settlement recognised in Lancaster *v.* Dolan, 1 Rawle 231, and a long line of cases following it. To have said so would have been to overthrow the donor's right to control his own property within the bounds of his legal authority, and to limit the extent and operation of his gift. This is the root of the error which has led to the attempt in this case to overturn the authority of Wright *v.* Brown and Wife, 8 Wright 224. There is a wide difference between an enactment that a married woman's property shall continue her own as fully after marriage as before, and that all property accruing to her, shall be owned, used, and enjoyed by her as her own separate property, without liability to the debts or the control of her husband, and an act to confer rights she does not possess, and actually withheld from her by the instrument conferring her title. We see no ground, therefore, on which Mr. Dorrance could conclude that he was buying a good title when he took Mrs. Atherton's deed for the property given to her by Jacob Gould without a power of sale. Such was the effect of his will without resorting to the express restriction on her power of sale, which makes the legal effect certainly no weaker. Jacob Gould had a right to control his gift so that she should have no power of parting with the estate under the influence or dictation of her husband. We see no reason to disaffirm Wright *v.* Brown and Wife, while the argument in its favor is so fully stated in the opinion it is unnecessary to defend it.

The second question cannot avail the plaintiff in error. Mrs. Atherton held the estate subject to the restriction imposed by the donor, having no right and no power to sell it, and in this condition died, her husband surviving her. By the terms and effect of the testator's will the property passed to her heirs. The estate became vested absolutely in them, and their title was both legal and equitable. It did not descend to them charged with a trust or a moral obligation imposed upon them to confirm the deed to Mr. Dorrance. In this condition the Act of 22d April 1863, found the estate. It undertook to make the deed of a married woman (who had no trustee) of like force and effect as if a power of sale had been contained in the instrument creating

[Shonk *v.* Brown.]

her separate estate. The effect of the act was simply to divest the estate of the children, by conferring upon the mother, years after her death, and after the estate had vested in them, a power to sell, which she did not possess under the will or at law, up to the time of her death. This was an arbitrary and unjust exercise of power, quite as flagrant as that complained of in Norman *v.* Heist, 5 W. & S. 171, and in Dale *v.* Medcalf, 9 Barr 108. Many cases have been cited to prove that this legislation is merely confirmatory and valid, beginning with Barnet *v.* Barnet, 15 S. & R. 72, and ending with Journeay *v.* Gibson, 6 P. F. Smith 57. The most of them are cases of the defective acknowledgments of deeds of married women. But there is a marked difference between them and this. In all of them there was a power to convey, and only a defect in the mode of its exercise. Here there is absolute want of power to convey in any mode. In ordinary cases a married woman has both the title and the power to convey or to mortgage her estate, but is restricted merely in the manner of its exercise. This is a restriction it is competent for the legislature to remove, for the defect arises merely in the form of the proceeding and not in any want of authority. Those to whom her estate descends, because of the omission of a prescribed form, are really not injured by the validation. It was in her power to cut them off, and in truth and conscience she did so, though she failed at law. They cannot complain, therefore, that the legislature intervenes to do justice. But the case before us is different. Mrs. Atherton had neither the right nor the power during coverture to cut off her heirs. She was forbidden by the law of the gift which the donor impressed upon it to suit his own purposes. Her title was qualified to this extent. Having done an act she had no right to do there was no moral obligation for the legislature to enforce. Her heirs have a right to say: This was our grandfather's will. The estate was vested in us because there was no power to prevent it in accordance with his will. The legislature cannot take our estate and vest it in another who bought it with notice on the face of his title that our mother could not convey to him. Menges *v.* Wortman, 1 Barr 218, the strongest case cited outside of the line of deeds defectively acknowledged, is no longer authority except in the case itself: Dale *v.* Medcalf, 9 Barr 108; Spragg *v.* Shriver, 1 Casey 286; Menges *v.* Dentler, 9 Id. 495; Lycoming *v.* Union, 3 Harris 172. The true principle on which retrospective laws are supported was stated long ago by Duncan, J., in Underwood *v.* Lilly, 10 S. & R. 101, to wit: where they impair no contract or disturb no vested right but only vary remedies, cure defects in proceedings otherwise fair, which do not vary existing obligations contrary to their situation when entered into and when prosecuted. The same principle is stated by Strong, J., in the last case cited by the plaintiff in error:

Journeay *v.* Gibson, 6 P. F. Smith 60. Such legislative acts, he says, are sustainable only because they are supposed not to operate upon the deed or contract, by changing it, but upon the mode of proof.

We see no error in the record, and the judgment is therefore affirmed.