## Statler, Appellant, *v.* United States Savings & Trust Co. of Conemaugh.

Argued May 7, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*George Statler*, p. p., appellant.

*Morton Meyers*, of *Graham, Yost & Meyers*, for appellee.

OPINION BY STADTFELD, J., July 10, 1936:

This is an action of assumpsit instituted on January 22, 1934, by a depositor against a trust company to recover $630, the amount on deposit in two savings accounts. An affidavit of defense was filed setting up under "New Matter" that, when suit was instituted, the defendant was operating on a restricted basis under the provisions of the Sordoni Act (Act of March 8, 1933, P. L. 9) ; that is, that the Secretary of Banking, pursuant to the provisions of this act, had extended payment of all deposits of the defendant, and the plaintiff could not sue for them while the defendant was operating under its protection. The affidavit of defense also set out that a plan for the reorganization of the defendant under the Act of May 4, 1933, P. L. 271, had been

prepared and was being submitted to depositors and stockholders for approval.

Subsequently the defendant filed an amended affidavit of defense. The first ground of defense is set out under New Matter in paragraph 2, subsequently amended by leave of court; the second ground is set out in paragraph 3. Paragraph 2, as amended, avers that at the time suit was instituted the defendant had complied with the provisions of the Sordoni Act and was operating by permission of the Secretary of Banking under its protection. This is the same defense set up in the original affidavit of defense.

Paragraph 3 of the amended affidavit of defense sets out that a reorganization of the defendant had been effected under the provisions of the Act of May 4, 1933, P. L. 271. The plan of reorganization was attached. The plan was approved by the Department of Banking, by holders of more than 75% of the outstanding shares of the defendant's capital stock, and by depositors and other creditors to whom was due at least 75% of its total liabilities. It therefore became effective under the provisions of the Act of May 4, 1933, P. L. 271.

To this New Matter the plaintiff filed a reply. It is not denied that the defendant was operating under the protection of the Sordoni Act when the suit was instituted; nor is it denied that the defendant reorganized under the provisions of the Act of May 4, 1933, P. L. 271, after obtaining the necessary approval. All this is immaterial, plaintiff claims, because on Feb. 18, 1933, before the passage of the Sordoni Act or the Act of May 4th, he gave a notice of withdrawal of the balance in his accounts. He therefore claims he has a preference which entitles him to be paid in full. The Sordoni Act and the Act of May 4th were passed after he gave notice of withdrawal, and he says that as to him they are therefore "ex post facto laws".

Under the rules and regulations of the defendant's

savings department, thirty days' written notice of withdrawal was required.

Defendant filed a rule for judgment for want of a sufficient reply to new matter under the Act of April 22, 1929, P. L. 627, 12 PS Sec. 735. The court directed judgment to be entered in favor of defendant in an opinion by GREER, J., concurred in by McCANN, P. J., and McKENDRICK, J. From the judgment so entered, plaintiff took this appeal.

The essential facts are not in dispute. Chronologically, they may be stated as follows: On February 18, 1933, the plaintiff gave a notice of withdrawal. On March 4, 1933, the bank holiday was declared, and the defendant, together with all other banks in the land, closed. It remained closed from March 4 to March 18. On March 18 it reopened on a restricted basis under the provisions of the Sordoni Act. This Act was passed March 8, 1933, and was retroactive to February 27, 1933. On May 4, 1933, the legislature passed an act regulating reorganization of banks and trust companies (Act of May 4, 1933, P. L. 271). The defendant reorganized under this act, the reorganization becoming effective on June 25, 1934. The defendant operated under the Sordoni Act from March 18, 1933 to June 25, 1934.

The notice given by plaintiff on February 18, 1933, had not expired on March 4, 1933, when the bank closed during the bank holiday, nor had it expired on March 18, 1933, when it reopened on a restricted basis under the provisions of the Sordoni Act.

Appellant contends that (1) there are facts which should have been passed upon by a jury; (2) that the Act of May 4, 1933 was passed after the cause of action accrued and is an ex post facto law which is in conflict with the Constitution of Pennsylvania; (3) that the Act of March 8, 1933 is a retroactive act which is prohibitive, and at the most, could be effective only to

the retroactive date named in the Act, which was February 27, 1933; (4) that the legislature has no right to pass a retroactive Act and especially when it changes the rights of a depositor in a savings bank; (5) that at the time the action was brought, the Secretary of Banking had not approved the merger or consolidation; (6) that it was the duty of the defendant to keep the money deposited in the Savings Department separate from the funds of other departments of the bank, especially as prior notice of withdrawal had been given.

In Buchanan v. Corson et al., 51 Pa. Superior Ct. 558, this court, in an exhaustive opinion by Judge HEAD, discussed the question of retroactive legislation and stated on p. 561: "And we must all agree that the statute cannot be successfully assailed nor its necessary consequences be avoided merely because it is retroactive. Many eminent jurists in learned opinions have endeavored to define the boundaries within which legislative acts of that character could be properly upheld. Journeay v. Gibson, 56 Pa. 57; Shonk v. Brown, 61 Pa. 320; Lane v. Nelson, 79 Pa. 407; and Grim v. Weissenberg School District, 57 Pa. 433, are notable examples of such opinions and about exhaust the legal learning on the subject. A brief excerpt or two from some of them will serve to mark the lines within which such legislation must be considered and the difficulties necessarily attendant on the determination of such questions. In Lane v. Nelson, 79 Pa. 407, 410, Mr. Justice PAXSON said: 'Legislation of the character referred to is no novelty in this state. We have numerous instances in which it has been invoked for a great variety of purposes. In some cases it has been sustained, and in others declared unconstitutional. The boundary line between the domains of authorized and prohibited legislation is not very clearly defined.' In Grim v. School District, 57 Pa. 433, Mr. Justice SHARSWOOD said: 'Retrospective laws and state laws divesting vested rights,

unless ex post facto or impairing the obligation of contracts, do not fall within the prohibition contained in the constitution of the United States, however repugnant they may be to the principles of sound legislation ...... Neither are they expressly or impliedly forbidden in any section of the ninth article or declaration of rights of the Commonwealth of Pennsylvania.' "

The Sordoni Act was under consideration by this court in Pestcoe v. Sixth National Bank of Phila., 112 Pa. Superior Ct. 373, 171 A. 302, and its constitutionality sustained in an opinion by our Brother KELLER, now President Judge. Quoting from the same, pp. 380, 381: "Incorporated banks are peculiarly the subject of supervision by government. Laws regulate their incorporation, their receipt of deposits, their reserves, their conduct; provide for a preference of deposits over general debts; and, on insolvency, or inability to pay all depositors on demand, secure the equal treatment of all depositors and prevent preferences in favor of some to the injury of the rest.

"If the General Assembly—or the Congress, as the case may be,—in the banking crisis which existed in February and March, 1933, deemed it advisable to permit banking institutions, which, in the opinion of the Secretary of Banking,—or, as respects national banks, the Comptroller of the Currency—were only temporarily embarrassed and not hopelessly insolvent, and were likely under favorable conditions to be able to resume normal business, to remain open only for the receipt and payment of new deposits, but to restrict temporarily the withdrawal of their existing deposits, it could lawfully do so. Such action, having in view the just and equal distribution of the bank's assets among all its depositors, in the language of Chief Justice FULLER in Merrill v. Nat. Bank of Jacksonville, 173 U. S. 131, 147, 'involves no invasion of prior contract rights of any such creditor.' ...... That the action of the General

Assembly of the State of Pennsylvania, which, by authority of Congress, the Comptroller was authorized to extend to national banking associations, was not an unconstitutional impairment of the obligations of contracts (Art. I, Sec. 10) nor repugnant to the due process and equal protection clauses of the 14th amendment of the Federal Constitution, is settled by the decision of the United States Supreme Court in Home B. & L. Assn. v. Blaisdell, 290 U. S. 398 (decided January 8, 1934, opinion by Chief Justice HUGHES)."

The Sordoni Act is not an ex post facto law, although retrospective in its operation. This distinction is pointed out by Mr. Justice PAXSON in Lane v. Nelson, supra, on p. 410: "There is no clause, either in the Constitution of the United States or of this Commonwealth, which prohibits retrospective laws: Grim v. Weissenberg School District, 7 P. F. Smith 433. The legislature cannot impair the obligation of a contract, or pass an ex post facto law, for both of these are expressly forbidden. But an ex post facto law, is one which makes an act punishable in a manner in which it was not punishable when it was committed: Fletcher v. Peck, 6 Cranch 138."

The act provides: "The Secretary of Banking is hereby authorized and empowered ...... whenever in his judgment the circumstances warrant it, to authorize any ...... trust company ...... (a) to extend for such period as he deems necessary and expedient payment of any time deposits where notice of withdrawal has been given or may hereafter be given." Under Section 5 of the act, the powers thus conferred upon the Secretary of Banking were to terminate six months after the approval of the act by the Governor; but the Governor was given power to extend the effective period, by proclamation, for an additional period not exceeding two years. At the expiration of the six months' period, the Governor by proclamation did extend the

effective period of the act, and it was in effect, and the defendant operating under it, when this suit was instituted. The defendant continued to operate under its protection until June 25, 1934. It stayed the hands of all depositors during the period of the emergency, effectively preventing them from harassing banks operating under its provisions. Under its express terms, the time of payment of this plaintiff's deposit was extended during the period defendant operated under restrictions, and his deposit was therefore not payable when he issued his writ. In White v. Miller, 43 Pa. Superior Ct., 572, 576, it was said: "The plaintiff cannot supply the want of a valid claim after the commencement of the action by the acquisition or accrual of one during the pendency of the action, nor can a plaintiff recover in a pending action on a cause of action which occurred after the institution of such action, even though such cause of action relate to the subject matter of the pending action."

In Phila. v. Pierson, 211 Pa. 388, 60 A. 999, it was held at p. 393: "The appellee was entitled to payment of only such an amount as he had a right to sue for when he brought his action. ...... the fact that the whole sum may have become due when he asked for judgment is no reason for awarding it to him, if, in the first instance, he had no right to sue for it: Columbia National Bank v. Dunn, 207 Pa. 548." To the same effect see Summers v. Prudential Ins. Co., 319 Pa. 270, 179 A. 78; Duncan v. Lawrence, 24 Pa. 154, 157.

*As to Reorganization.* Appellant, without discussion, claims that the Act of May 4, 1933, P. L. 271, is in conflict with Sec. 17 of Article 1 of the Constitution of Pennsylvania, which provides: "No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privilege or immunities, shall be passed." He does not state in what respect the said Act violates the section of the Constitution referred to.

Banking has always been deemed to be affected with a public interest and where public interests so demand, the State is warranted in taking the whole business of banking under its control. In the language of Mr. Justice HOLMES in Noble State Bank v. Haskell, 219 U. S. 104, 113: ".......we are of opinion that it may go from regulation to prohibition except upon such conditions as it may prescribe."

The United States Supreme Court in considering a similar statute in Doty v. Love, 295 U. S. 64, 70, said by Mr. Justice CARDOZO: "The Constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a state official: Gibbs v. Zimmerman, 290 U. S. 326, 332. The argument will not hold that the necessary operation of the statute is to subject dissenting creditors who may be as many as one-fourth, to the will or the whim of the assenting three-fourths. The creditors favoring reorganization, though they be ninety-nine per cent., have no power to impose their will on a minority. They may advise and recommend, but they are powerless to coerce. Their recommendation will be ineffective unless approved by the Superintendent." Nor does the Constitution of Pennsylvania put an inhibition on such a plan of reorganization. Dissenting creditors have frequently been compelled to submit to a plan of reorganization assented to by the requisite majority of creditors. See Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 585, and cases cited. In fact, they have been enjoined from collecting their claims, except in the manner set out in the reorganization proceedings: Phipps v. Chicago, etc. Ry. Co., 284 Fed. 945.

Under Sec. 4 of the Act of May 4, 1933, supra, it is provided that "Any plan of reorganization, which shall have been adopted and approved in the manner provided by this Act, shall be binding upon all depositors, other creditors, and shareholders of the bank or the trust

company, whether or not they have consented to such plan of reorganization."

As to appellant's claim that it was the duty of defendant to keep the money in the savings department separate from the funds of other departments, we cannot agree with this contention. The relation of the bank and depositor is that of debtor and creditor only. No trust relation exists. The same relation exists as to the account of plaintiff as trustee: Miller's Appeal, 218 Pa. 50, 66 A. 995; Commonwealth v. Tradesmen's Trust Co., 250 Pa. 372, 95 A. 574; Webb v. Newhall, 274 Pa. 135, 117 A. 793; Conneautville Bank's Assigned Estate, 280 Pa. 545, 124 A. 745; Woodward's Petition, 307 Pa. 485, 161 A. 738.

We have given careful consideration to the several positions suggested by appellant. We find no merit in any of them and believe that the court properly entered judgment in favor of defendant for want of sufficient reply to new matter.

The assignments of error are overruled and judgment affirmed without prejudice to the right of plaintiff to recover anything to which he may be entitled under the reorganization agreement.