## Carey v. Chestnut Hill Mutual Building & Loan Association et al.

*Zoob & Matz,* for plaintiff.

*William C. Ferguson, Jr.,* and *Hugh D. Scott, Jr.,* for defendant Chestnut Hill Savings & Loan Association.

*Horace M. Burke,* for defendant Chestnut Hill Mutual Building & Loan Association.

SMITH, P. J., October 31, 1944.—This matter comes before the court on exceptions to the adjudication of the chancellor.

The facts show that Bessie Carey, plaintiff, on and prior to August 27, 1943, was the owner of 10 shares of matured stock in the Chestnut Hill Mutual Building & Loan Association. This stock had a book value of $2,000. The total outstanding shares of stock in the association were in the number of 4,182½ shares. At that time, there were in the Germantown district of Philadelphia four building and loan associations, to wit, the Chestnut Hill Mutual Building & Loan Association, to which plaintiff belonged, the Equitable Building & Loan Association of Germantown, Pelham Building & Loan Association, and Tulpehocken Building & Loan Association of Philadelphia. These associations prepared a plan of reorganization calling for the transfer to a new association, to be created and known as Chestnut Hill Savings & Loan Association, of such assets of each association as were acceptable to the Federal Savings & Loan Insurance Corporation, as the basis for the assurance by the Chestnut Hill Savings & Loan Association of accounts insured by the said Federal Savings & Loan Insurance Corporation. On the evening of August 27, 1943, pursuant to a written notice sent to all the stockholders of the Chestnut Hill Mutual Building & Loan Association, a meeting of the stockholders was held for the purpose of voting on the approval or disapproval of the said plan of reorganization. More than 80 percent of the members of the Chestnut Hill Mutual Building & Loan Association voted in approval of the plan. Plaintiff did not.

Upon the approval of 80 percent of the members of the other building and loan associations, agreeing to the plan of reorganiation, it was agreed that the interests of the shareholders in the four old associations were to receive, in varying proportions, insured accounts in the newly-incorporated Chestnut Hill Savings & Loan Association, but were relegated for the balance of their claims to the remaining assets of the four old associations not transferred to the newly-incorporated Chestnut Hill Savings & Loan Association. The plan also provided that the four old associations should simultaneously commence the process of liquidation under liquidating trustees.

This plan of reorganization on or about December 1, 1943, had the approval of the Department of Banking as well as the owners of 80 percent of stock of each of the four old associations.

It is the contention of plaintiff that her claim should be considered as though there were a merger of the four building and loan associations and that she was entitled to the sum of $2,000 for her shares of stock.

The plan of reorganization provided, inter alia, that the Chestnut Hill Savings & Loan Association, the newly-incorporated company, should commence business with an adequate amount of cash so as to permit a substantial amount of withdrawal by shareholders not confident in the mutual association. The plan of reorganization provided that 50 percent of the Chestnut Hill Mutual Building & Loan Association, to which plaintiff belonged, should be insured, but as a result of a reconsideration by the Federal Savings & Loan Insurance Corporation, the result of an audit made on June 30, 1943, the shareholders of the Chestnut Hill Mutual Building & Loan Association received 62 percent of their accounts with that association in insured accounts in the Chestnut Hill Savings & Loan Association.

The question is, under what section of the Building and Loan Code was this plan of reorganization con-

ducted? The chancellor found as a fact it was not a plan of a merger but a plan of reorganization, and stated that plaintiff was entitled to receive 62 percent of her account from the newly-incorporated building and loan association, and that she was relegated to the liquidation of the remaining assets in the old association for the balance of her claim.

It is the contention of plaintiff that she has a status and should be given the same rights as a nonassenting stockholder in the case of a merger. It is argued that a merger and a reorganization are similar.

Building and loan associations are governed by the Building and Loan Code of May 5, 1933, P. L. 457, as amended by the Act of March 15, 1937, P. L. 63. The Building and Loan Code provides for (a) a merger and consolidation; (b) a reorganization.

It is apparent that the four building and loan associations proceeded under the (b) provision. This remedy provided for reorganization independent of and exclusive of the remedy providing for the merger and consolidation of building and loan associations. Section 1011 of the code provides for the reorganization of building and loan associations. That section provides as follows:

"Section 1011: Reorganization of Associations. Any association may adopt any plan of reorganization which the department shall deem equitable and to the best interests of the creditors and shareholders. The plan of reorganization shall be valid only if approved, after such notice as the department shall sanction, by the holders of at least eighty percentum of the outstanding shares of the association, and by creditors to whom is due at least ninety percentum of the total amount of all liability of the association to creditors. However, claims of creditors, which will be satisfied in full under the provisions of the plan of reorganization, shall not be included among the creditor liability of the association in computing the ninety percentum thereof required by this section. Any plan of reorganization,

which shall have been adopted and approved in the manner provided by this section, shall be binding upon all shareholders and creditors of the association, whether or not they have consented to such plan of reorganization."

Under the plan of reorganization as approved by both 80 percent of the stockholders of the Chestnut Hill Mutual Building & Loan Association, to which plaintiff belonged, and the Department of Banking that corporation continued under its charter rights; it still had some assets to liquidate and it had not merged with any other organization.

In the case of Greater Adelphia B. & L. Assn. v. Trilling et ux., 121 Pa. Superior Ct. 469, Judge Parker (then of that court) said (p. 474) :

"As was held in the case of Lauman v. Lebanon Valley R. R. Co., supra, there is no doubt that in the case of a merger, the merging company loses its identity, abandons its name, and ceases to have a corporate existence as such, but its 'property and good will' pass 'into the control and ownership of the new corporation' ".

Under the plan as adopted for reorganization, the building and loan association to which plaintiff belonged will not be terminated until under its corporate powers it has completed its liquidation and has filed articles of dissolution as is provided in section 1113 of the Building and Loan Code.

Plaintiff claims that because she has dissented from the plan of reorganization it is unconstitutional to deprive her of certain rights. The evidence, by inference at least, indicates that all these associations which reorganized were not in the best of shape. The Chestnut Hill Mutual Building & Loan Association could have liquidated and it probably would have taken a considerable time for plaintiff to have secured her proportionate share of the assets. Under this new plan, even as of today, she may secure 62 percent of the matured value of her shares, then look to the old

association for her share of the balance upon liquidation.

It is quite clear that the reorganization of a corporation or a building and loan association is not unconstitutional. In Statler v. United States Savings & Trust Company of Conemaugh, 122 Pa. Superior Ct. 189, Judge Stadtfeld, speaking for the court, said that the Constitution of this State did not place such an inhibition upon the plan of reorganization even as to creditors. (See also 1 Segal on Pennsylvania Banking and Building & Loan Association Law, p. 643.)

Plaintiff also argues that section 1011 of the code has for its purpose the reorganization of a building and loan association as a preliminary step to its liquidation, and that, since the Chestnut Hill Savings & Loan Association (the reorganized company) has continued in business, it has not complied with the provisions of that section of the code.

With that contention we cannot agree. To us it appears that such contention is illogical and ill-founded. While the said section does provide how a reorganized building and loan association *may* liquidate, it does not say that it shall liquidate after reorganization. It appears to us that section 1011 serves two purposes and that it was the intent of the legislature first to reorganize a building and loan association for the purpose of best serving the interest of all the shareholders therein, and secondly, "without limiting the power of an association to adopt any plan of reorganization approved by the department", to authorize it to transfer its assets to another association for the purpose of liquidating its assets.

We can find no judicial decision by our courts upon this section of the code, but we believe its construction must be analogous to the law relating to banks and trust companies, which provides that upon reorganization, in accordance with the Act of May 4, 1933, P. L. 271, it shall be binding upon depositors, other creditors, and shareholders, whether they have consented to it

or not: Statler v. United States Savings & Trust Company of Conemaugh, 122 Pa. Superior Ct. 189, 197.

For the reason aforesaid, it is our opinion that there is no merit in the exceptions filed by plaintiff. The chancellor in his adjudication has carefully considered this whole matter; his findings of fact are justified by the evidence; his conclusions of law are sound. For this reason, we dismiss the exceptions as to fact and law as filed by plaintiff.

### Decree

And now, to wit, October 31, 1944, the adjudication of the chancellor is confirmed and the exceptions filed by plaintiff to the chancellor's findings of fact and conclusions of law are dismissed. The decree nisi of the chancellor as follows: "It is ordered and adjudged and decreed that the bill be dismissed and that the complainant pay the cost of this proceeding"; is adopted and confirmed as the decree of this court.