# Dillon *versus* Dougherty.

1. Ejectment can be maintained by the alienee of an owner dissiesed, as well as by himself.

2. Succeeding trustees may be substituted in ejectment, for those by whom the suit was brought, and the omission of one or more, may be supplied by adding them, at any time before trial.

3. An act of assembly cannot have a retroactive operation, if such operation would defeat rights vested before its passage.

4. Previous to the Act of 26th April, 1850, the alienation, by a plaintiff in ejectment, of his title, more than twenty-one years after the commencement of the adverse possession, under which the defendant claimed, was equivalent to the discontinuance of the suit; and neither the alienor nor alienee, could succeed, notwithstanding the suit was commenced less than twenty-one years after the commencement of the adverse possession.

5. An alienee, substituted in a suit commenced after the passage of the Act of 26th April, 1850, has all the rights which the original plaintiff would have had if he had made no conveyance.

ERROR to the Court of Common Pleas of *Cambria county.*

This was an ejectment, instituted by Peter Fritz against Samuel Dillon, to recover the possession of a tract of land, containing 344 acres and 22 perches, surveyed in pursuance of a warrant dated the 24th April, 1794, in the name of John Kunkell. The plaintiff in error showed a legal title to the one undivided fourth part of the Kunkell survey, provided it had not been defeated by the operation of the Statute of Limitations, or by the transfer of it to James Rhey, July 24, 1849, *after* the institution of the ejectment. Dougherty obtained a conveyance on the 3d September, 1850, of James Rhey's interest, and on the 5th July, 1852, was substituted as the plaintiff, upon the record, under the provisions of an Act of Assembly, passed on the 26th April, 1850.

The defendant's counsel, conceiving that this Act of Assembly did not embrace the case, and that the substitution under the fact, disclosed in the evidence, was improvidently made, moved the court to strike it off. But this the court, TAYLOR, P., refused to do. The defendant's counsel then asked the instruction from the court to the jury, that as the original plaintiff, Peter Fritz, had divested himself of the title after the institution of the suit, to wit, on the 24th July, 1849, his right to maintain the action, for anything but the costs, was gone, and, under the facts disclosed by the evidence, could not be restored by the subsequent Act of Assembly, passed on the 26th April, 1850; that therefore there could be no recovery of the *land* in this ejectment. The court refused this instruction, and charged the jury that the plaintiff was entitled to recover the one undi-

[Dillon *v.* Dougherty.]

vided fourth of the Kunkell tract. Whereupon a verdict was rendered accordingly. The charge of the court is assigned for error.

*Foster* and *Miles,* for plaintiff in error, referred to *Bedford* v. *Schilling,* 4 S. & R. 410; *Robb* v. *Harlan,* 7 Barr, 293; *Hinckle* v. *Rifert,* 6 Id. 198; 1 Ld. Raym. 1352; *Couch* v. *Jeffries,* 4 Burr. 2460; *McCulloch* v. *Cawker,* 5 W. & S. 427; *Pedrick* v. *Searl,* 5 S. & R. 240; *Turner* v. *Turner,* 1 Wash. C. C. R. 139; *McCabe* v. *Emmerson,* 6 H. 3.

*White* and *Coffee,* for defendant in error, referred to *Hunt* v. *Crawford,* 3 Penn. 426; Act of 31st March, 1823; *Hepburn* v. *Curts,* 7 Watts, 300; *Evans* v. *Montgomery,* 5 W. & S. 218; *Bambaugh* v. *Bambaugh,* 11 S. & R. 191.

The opinion of the court was delivered December 15, 1853, by BLACK, C. J.—The defendant below alleges, that he, and those under whom he claims, have been in the actual adverse possession of all the land in dispute, since 1829. In 1846, ejectment was brought by Peter Fritz, who had the legal title to one-fourth. In 1849, Fritz sold and conveyed his interest to Rhey and Dougherty. In 1852, Dougherty, (who had, in the meantime, purchased Rhey's interest,) was substituted as plaintiff in Fritz's ejectment, agreeably to the Act of the 26th April, 1850. The court charged the jury, that the Statute of Limitations would not protect the defendants.

The law of Pennsylvania, unlike that of England, encourages the transfer not only of lands whose owners are in actual possession, but also of their naked rights to realty, which can only be enforced by action. Ejectment, therefore, can be maintained by the alienee of an owner disseised, as well as by himself. Many legislative provisions have been made, to prevent the abatement of the action, or the defeat of one otherwise entitled to recover, in consequence of being joined with others who are not. Succeeding trustees may be substituted for those by whom the suit was brought, and the omission of one or more may be supplied, by adding them, at any time before trial. The suit is not ended by the death of either party. His heirs or devisees may be placed on the record, and the cause will be tried as if no change had been made.

The Act of 1850, which authorizes one to whom a plaintiff in ejectment has conveyed his interest, pending the action, to be substituted, is in consonance with the policy of previous legislation on the subject, and is not to be quarrelled with.

But an Act of Assembly, however beneficial its general purpose, must not be so construed that it will produce a gross wrong

[Dillon v. Dougherty.]

in any particular case.   It cannot have a retroactive operation, if such operation would defeat rights vested before its passage.

The words of a statute, affecting a title to property, must be understood in a sense exclusively prospective, when they are capable of being so interpreted; and if it be made retrospective, by language so plain and unequivocal, as to leave no room for construction, the court must take the responsibility of declaring the act void, so far as it would otherwise have the effect of giving to one person what legally belongs to another.

In the present case, Fritz, who brought the ejectment, and who would have been entitled to recover the land, if he had prosecuted his action to judgment, sold and conveyed his interest to another, after the expiration of twenty-one years from the beginning of the defendant's adverse possession.   This made an end of his rights to recover.   The outstanding title of his alienee was a full defence against him.   Dougherty's condition was no better; for he could not prosecute the action already commenced by Fritz, and a new one in his own name would be barred by the Statute of Limitations.

The alienation of the plaintiff's title was, to the defendant, equivalent to the discontinuance of the action.   A new suit by Dougherty was the only remedy against him, and to that he could set up the whole time, from the day his possession began, to that of issuing the writ.   He was safe; as the law then stood, his title was indisputable.   The acts of his adversaries had made it so, by putting him in a situation where he could count the period which elapsed during the pendency of Fritz's suit, as well as any other part of the twenty-one years.   While the parties occupied this attitude, the defendant in possession, with an irresistible defence to the pending action, and an answer equally conclusive to any that might be brought, the legislature interposed with a law, which authorized the alienee to be substituted. But the act does not defeat a right which the defendant otherwise would have had, or make his title worse than it was before, and we cannot give it any such effect by construction.

The Statute of Limitations must so operate, as to protect him in the same manner it would have done, if the substitution had never been made, or the law authorizing it had never been passed.

We have already decided, that the Act of 1850, does authorize the substitution of a plaintiff, in a cause pending at the date of its passage.   The order of the court, permitting the substitution, therefore, was right; the error was, in not instructing the jury, that the Statute of Limitations was a bar to it, if the twenty-one years had expired before Dougherty's name came upon the record.

An alienee, substituted in a suit commenced after the passage

of the Act of 1850, has all the rights which the original plaintiff would have had, in case he had made no conveyance.

A law which prevents the abatement of actions in future cases, and which interferes with no rights already vested, is not objectionable.

But we are compelled to treat the substitution as a new suit, in a case like the present; because, by that means alone, can we prevent one man's property from being given to another, by a legislative decree, which was intended for another purpose.

Judgment reversed and *venire facias de novo* awarded.