## Alter's Appeal.

1. Husband and wife had wills prepared, giving their property to each other; by mistake each signed the other's will. After the husband's death an Act of Assembly was passed authorizing the court to hear testimony and if the mistake was proved to reform the will. *Held*, that the right of the husband's heirs had vested on his death and the act was invalid.
2. The husband had executed no will and there was nothing to reform.

January 13th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the Register's Court of *Philadelphia*: No. 163, to July Term 1870.

The decree appealed from was refusing to admit to probate, as the will of George A. Alter, a paper writing, signed "Catharine Alter." Catharine Alter was the sole devisee, legatee and executor named in the will, and was the appellant.

In March 1862, under the instructions of George A. Alter and Catharine Alter, who was his wife, Mr. Flood, a lawyer, prepared for each of them a will, the husband giving to the wife all his property, and appointing her executor; both were dated March 31st 1862. By mistake, the wife signed the husband's will, and the husband signed the wife's; both were witnessed at the same time by three witnesses, the same persons, the draftsman of the will being one. George A. Alter died August 18th 1869. After his death the mistake was discovered, but the register refused to admit the will intended to have been George A. Alter's to probate.

An Act of Assembly was passed February 23d 1870, reciting the foregoing facts, and enacting :—

"Sect. 1. That any executor, &c., or parties in interest under the last will and testament of the said George A. Alter, deceased, may present his, her or their petition to the Register's Court of Philadelphia, setting forth the facts as near as can be done as to

the mistake relative to said George A. Alter signing the will drawn for his said wife Catharine to execute, when he supposed he was signing, sealing and executing a will drawn and prepared for himself to execute, and by mistake signed his name to the wrong paper writing as his own last will and testament, and that the said Catharine Alter signed, sealed and executed a paper writing which she supposed was her last will and testament, when she in fact signed and executed the paper which it was designed should be and was the last will and testament of her late husband, George A. Alter, deceased, all of which it is alleged was done by mistake of both said persons. And upon the hearing of said petition and the necessary proof in relation to the alleged mutual mistake by the said respective persons above named, the said Register's Court are hereby clothed and invested with all the powers of a court of chancery in relation to the premises, and, if upon full proof the said court are satisfied of said mistake, are authorized and empowered to reform the said paper writing which purports to be his last will and testament, but which was signed through mistake by his said wife Catharine, and the said court shall have full power to call before them all persons and witnesses in relation to the execution of said papers, and the said court upon being fully convinced that the said George A. Alter executed the wrong paper writing by mistake, are hereby authorized to have entered in the office for the register of wills in and for the said city and county the said paper writing which he intended to execute as his last will and testament, as if the said paper writing had been signed by him with his own hand and seal, and not by his said wife Catharine, as it shall appear to have been.

"Sect. 2. That upon a final decree being made in said case upon a full hearing thereof, with proper notice to all parties or persons interested in said estate, and such order and decree so made by said Register's Court, shall be conclusive upon all persons and parties as to the execution of said paper writing, and shall be as binding and valid as to the real and personal estate by the said George A. Alter, deceased, as if there had been no mistake as to his executing a wrong paper, and the paper or papers thus reformed by the decree of the said Register's Court shall be for ever held to be the last will and testament of the said George A. Alter, deceased, as if the same had been signed and sealed by him: *Provided always*, that any person or party interested in said estate as heir or otherwise shall have the right of appeal to the Supreme Court from the decree of said Register's Court at any time within one year from the entering of said decree, but not afterwards."

In pursuance of this Act of Assembly, Catharine Alter presented her petition to the Register's Court, setting out the facts as to the mistake in the execution of the papers. She also averred

[Alter's Appeal.]

that the said George A. Alter died without children, and stated in the petition the names and residences of his collateral heirs and next of kin. The prayers of the petition were: to appoint an examiner to take testimony; to make an order bringing in all the parties in interest; to reform the paper 'appearing to have been prepared as the will of George A. Alter, by striking off the signature " Catharine Alter," and causing the name " George A. Alter" to be signed thereto; to order the paper so signed to be admitted to probate as the will of George A. Alter, and letters testamentary to be granted to the petitioner, and for further relief.

An examiner was appointed, and a large amount of testimony taken clearly establishing the mistake and the other allegations of the petition.

The case was heard in the Register's Court before Leech, Register, and Ludlow and Paxson, JJ., of the Court of Common Pleas, and on the 18th June 1870, the petition was dismissed and order of probate refused, Ludlow, J., delivering the opinion.

Mrs. Alter appealed to the Supreme Court, and assigned the decree of the court for error.

*A. V. Parsons* and *W. L. Hirst*, for appellant.—They cited a number of private Acts of Assembly, giving power to the courts as to the probate of wills; they cited also on the power of courts to reform wills and other writings: Arndt *v.* Arndt, 1 S. & R. 256; Matthews *v.* Warner, 4 Vesey 186; Griffin. *v.* Griffin, 1 Burrows 549; Walmesley *v.* Read, 1 Yeates 87; Story's Eq. Jur., §§ 79, 80, 110; Willan *v.* Willan, 16 Vesey 72; Lansdown *v.* Lansdown, 2 Jacob & Walker 205; Milner *v.* Milner, 1 Vesey, Sr. 106; Phillips *v.* Chamberlaine, 4 Vesey 51; Parsons *v.* Parsons, 1 Vesey, Jr., 266; Beaumont *v.* Fell, 2 P. Wms. 141; Baylis *v.* Attorney-General, 2 Atkins 239; Stockdale *v.* Bushly, 19 Vesey 381; Rankin *v.* Mortimere, 7 Watts 372; Jenks *v.* Fritz, 7 W. & S. 201; Heacock *v.* Fly, 2 Harris 540; Gross *v.* Leber, 11 Wright 520; Danvers *v.* Manning, 2 Brown's C. C. 18; Stebbing *v.* Walkey, Id. 86; River's Case, 1 Atkins 410; Fonnereau *v.* Poyntz, 1 Brown's C. C. 412; Powell *v.* Biddle, 2 Dall. 70; 1 Redfield on Wills 348, 349; Lewis *v.* Lewis, 6 S. & R. 497; 1 Jarman on Wills 231; Armstrong *v.* Armstrong, 29 Alabama Rep. 528; Day *v.* Day, 2 Green Chan. Rep. 330.

*T. Mitchell* (with whom was *F. Heyer*), for appellees, cited Wills Act, April 8th 1833, § 6; Pamph. L. 249, Purd. 1016, pl. 6. Also, as to power of courts to reform a will: Adams on Eq. 172; 3 Black. Com. 431; Whitton *v.* Russell, 1 Atk. 448; 1 Story's Eq. Jur., § 106, and cases cited; Comyn's Dig., tit. Chancery, 3 F. 6, 7, 8; Redf. on Wills, ch. 7, 206 and notes; Greenough

[Alter's Appeal.]

*v.* Greenough, 1 Jones 489; Shinkle *.v.* Crock, 5 Harris 162; McCarty *v.* Hoffman, 11 Id. 507; Aurand *v.* Wilt, 9 Barr 54; Redfield on Wills, ch. 10; Stark. on Ev. 762–4; Mann *v.* Mann, 1 Johns. Ch. 231; Wallize *v.* Wallize, 5 P. F. Smith 242; In re Davy, 1 Swabey & Tris. 261; Hiscocks *v.* Hiscocks, 5 Mee. & W. 363; Tucker *v.* Seamen's Aid Soc., 7 Met. 188; Dent. *v.* Pepys, 6 Madd. Ch. R. 350; Kelley *v.* Kelley, 1 Casey 460; Stark. on Ev. 765; 1 Redf. on Wills, ch. 7, § 18, pl. 4; Norman *v.* Heist, 5 W. & S. 173: Adams Eq. 175, 248, 249; 1 Story's Eq. Jur., § 184, and note; 2 Id., §§ 1445, 1446; Allan *v.* McPherson, 1 H. of Lds. Cases 191; 1 Spence's Eq. Jur. 701.

The opinion of the court was delivered, February 9th 1871, by .AGNEW, J.—This is a hard case, but it seems to be without a remedy. An aged couple, husband and wife, having no lineal descendants, and each owning property, determined to make their wills in favor of each other, so that the survivor should have all they possessed. Their wills were drawn precisely alike, *mutatis mutandis*, and laid down on a table for execution. Each signed a paper, which was duly witnessed by three subscribing witnesses, and the papers were enclosed in separate envelopes, endorsed and sealed up. After the death of George A. Alter, the envelopes were opened and it was found that each had by mistake signed the will of the other. To remedy this error the legislature, by an Act approved the 23d day of February 1870, conferred authority upon the Register's Court of this county to take proof of the mistake, and proceed as a court of chancery to reform the will of George A. Alter and decree accordingly. Proceedings were had resulting in a decision of the Register's Court that there was. no will, and that the act to reform it was invalid, the estate having passed to and vested in the collateral line of kindred. From this decree an appeal has been taken by Catharine Alter.

On this statement the first inquiry is, Was the paper signed by George A. Alter his will? Was it capable of being reformed by the Register's Court? The paper drawn up for his will was not a will in law, for it was not "signed by him at the end thereof," as the Wills Act requires. The paper he signed was not his will, for it was drawn up for the will of his wife and gave the property to himself. It was insensible and absurd. It is clear, therefore, that he had executed no will, and there was nothing to be re- formed. There was a mistake, it is true, but that mistake was the same as if he had signed a blank sheet of paper. He had written his name, but not to his will. He had never signed his will, and the signature where it was, was the same as if he had not written it at all. He therefore died intestate, and his property descended as at law. ✔ The difficulty lies not in the want of power of a court of chancery to reform a mistake in an existing will,

[Alter's Appeal.]

when full equity power to that end is conferred by the law, but in the want of power to give an existence to that which had none before. And the objection to the validity of the act conferring the authority to decree the will, lies not in a want of power in the legislature to establish a will upon parol proof of the fact of making it, and of the intent to execute the proper paper, but in its want of power to divest estates already vested at law on the death of George A. Alter without a will. There being no will, it is evident that the effect of any subsequent legislation, call it by what name we may, is simply to divest estates. That this cannot be done is abundantly proved by Greenough v. Greenough, 1 Jones 494; McCarty v. Hoffman, 11 Harris 508; Norman v. Heist, 5 W. & S. 171; Bolton v. Johns, 5 Barr 145; Dale v. Metcalf, 9 Id. 108, and other cases. The first two cases are directly in point, for it was held therein that the Act of Assembly validating wills where the testator had made his mark instead of signing his name or expressly directing it to be signed for him, could not reach the case of a will so executed, where the testator had died before the passing of the act.

The decree of the Register's Court is therefore affirmed, with costs to be paid by the appellant.