# Brubaker's Estate.

*Judgment—Lien—Continuance of lien after death—Act of May 3, 1909, P. L. 386—Statutes, retroactive or prospective.*

1. Where a judgment was originally entered in 1893, was last revived in 1903, and the defendant in the judgment died in 1906, the lien was without limit of time as against the heirs and devisees of the defendant, and was not affected by the Act of May 3, 1909, P. L. 386, which limited the liens of judgments after the death of defendant to

the term of five years from their death unless revived by scire facias or otherwise. The act of 1809 had no retroactive effect.

2. A statute must always be interpreted so as to operate prospectively and not retrospectively unless the language is so clear as to preclude all question as to the intention of the legislature.

Argued Oct. 19, 1914. Appeal, No. 168, Oct. T., 1914, by John Z. Faust, from decree of O. C. Franklin Co., dismissing exceptions to auditor's report in Estate of Anna Barbara Brubaker, deceased. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Reversed.

Exceptions to supplemental report of A. G. McLanahan Esq., auditor.

From the record it appeared that William Brubaker in 1893, entered a judgment against his wife, Anna Barbara Brubaker, in the sum of $520, to secure a loan which he made her. This judgment was revived at various times, the last revival having been entered on March 27, 1903. Mrs. Brubaker died intestate on March 25, 1906, owning real estate subject to the lien of the judgment. William Brubaker died on May 3, 1912. On October 22, 1912, the orphans' court ordered a sale of the real estate of Mrs. Brubaker, and the sale produced a fund for distribution. The auditor appointed to distribute the fund awarded to John Z. Faust, the administrator of William Brubaker, deceased, the whole fund. The heirs of Mrs. Brubaker excepted. The exceptions were sustained, and the auditor was directed to amend his report. By a supplemental report he awarded the fund to the heirs of Mrs. Brubaker. Exceptions to the amended report were dismissed. John Z. Faust, administrator, appealed.

*Error assigned* was decree dismissing exceptions to the supplemental report.

*William S. Hoerner*, with him *H. H. Spangler*, for appellant.—The question is res adjudicata by the judg-

ment of the Supreme Court in Benner v. Phillips, 9 W. & S. 13.

See also Keenan v. Gibson, 9 Pa. 249.

*G. W. Atherton*, for appellee.

OPINION BY RICE, P. J., February 24, 1915:

The act of February 24, 1834, relating to the lien of judgments against decedents, contained the qualifying words, "as against a bona fide purchaser, mortgagee, or other judgment creditor of such decedent." And in the amendatory act of June 18, 1895, the qualifying words were, "as against a bona fide purchaser, mortgagee or other judgment creditor of such decedent, or of his heirs or devisees." It was uniformly held, in the construction and application of these acts, that the lien of a judgment obtained against a decedent in his lifetime continued indefinitely as against his heirs and devisees, and need not be revived every five years: Konigmaker v. Brown, 14 Pa. 269; Aurand's App., 34 Pa. 151; Shearer v. Brinley, 76 Pa. 300, 305; Shannon v. Newton, 132 Pa. 375; Colenburg v. Venter, 173 Pa. 113; Ziegler v. Schall, 209 Pa. 526; Meyer to use v. Safe Dep. & Trust Co. of Pittsb., 230 Pa. 106; Collins v. Phillips, 236 Pa. 386, 392. The rule was recognized, but held not to prevent the presumption of payment after twenty years, in Roberts v. Powell, 210 Pa. 594; and was also recognized, but held not applicable to the facts of the case, in Henry's Est., 34 Pa. Superior Ct. 597, 600. But sec. 3 of the Act of May 3, 1909, P. L. 386, provides as follows: "All judgments which at the time of the death of a decedent shall be a lien on his real estate shall continue to bind such real estate during the term of five years from his death, although such judgments be not revived by scire facias or otherwise after his death; and such judgments shall, during such term, rank according to their priority at the time of such death, and after the expiration of such term, such judgments shall not continue a

lien on the real estate of such decedent unless revived by
scire facias or otherwise, according to the laws regulating
the revival of judgments." This act, it will be observed,
omits the qualifying words of the acts of 1834 and 1895
to which we have referred, and expressly repeals all acts
or parts of acts inconsistent with it. It is to be pre-
sumed that the legislature knew of the construction that
had been given to the earlier acts and intended to abro-
gate the rule that the courts had deduced. This we agree
with the learned judge below is the clear meaning of the
act of 1909. But did the legislature intend it to have a
retroactive effect? Unquestionably, to construe the act
as applying to judgments obtained before its passage,
where the decedent died after its passage, would not
be giving such effect, and doubtless it should be so con-
strued. But it would be giving it a retroactive opera-
tion to hold that a lien, which at the time of its passage
was, as against heirs and devisees, unlimited as to time,
was destroyed if the decedent had died more than five
years before its passage, or, that it was converted into
a lien of three years' duration if the decedent had died
three years before its passage. If anything is clear, it is
that the legislature deemed five years the reasonable
time within which the holder of the lien should revive
it, and it is only by holding that the plaintiff in the
judgment in question had five years from the date of
the passage of the act within which to revive its lien,
that the act could be applied to the lien in question with-
out giving it a retroactive operation. The question, as
we view it, is not as to the constitutional power of the
legislature to abridge vested liens, but as to its intention,
in this instance, to abridge them to the extent that is re-
quired to bar the plaintiff's participation in the distribu-
tion of the fund realized from the sale of the decedent's
real estate. In Barnesboro Borough v. Speice, 40 Pa.
Superior Ct. 609, our Brother PORTER stated the prin-
ciples governing the question as follows: "The general
rule undoubtedly is that legislation which affects rights

will not be construed to be retroactive unless it is explicitly so declared in the statute. But where it concerns merely the mode of procedure it is applied, as of course, to litigation existing at the time of its passage: Kille v. Reading Iron Works, 134 Pa. 225. Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted: Shonk v. Brown, 61 Pa. 320. 'Retrospective laws generally,' if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative:' Taylor v. Mitchell, 57 Pa. 209. 'There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively unless the language is so clear as to preclude all question as to the intention of the legislature:' Neff's Appeal, 21 Pa. 243; McCabe v. Emerson, 18 Pa. 111. These well-settled principles have never been departed from and have been recognized and reaffirmed in a long line of cases: Smith v. Illinois Cent. Railroad Company, 36 Pa. Superior Ct. 584; Com. v. Danville Bessemer Company, 207 Pa. 302; Horn & Brennan Mfg. Co. v. Steelman, 215 Pa. 187; Lewis v. Penna. R. R. Co., 220 Pa. 317." To these cases may be added Sproul v. Standard Plate Glass Co., 201 Pa. 103, and Benner v. Phillips, 9 W. & S. 13. The latter case is particularly pertinent because it relates to the abridgment of liens which had vested at the time of the passage of the act under construction, and regarding it Justice ROGERS said: "Our unlimited respect for the legislature forbids us giving such a construction to this act as would impair vested rights. Such is not their intention, whatever aspect it may assume in a literal or narrow interpretation." The language of the act of 1909 is such as would be appropriately used if the legislature had a prospective operation in mind, and is not such as, we may safely as-

sume, would have been used if the legislature had intended to abridge vested rights to the extent that is necessary to sustain this decree. As said by Justice MITCHELL in Sproul v. Standard Glass Co., supra: "The present inquiry is not what the legislature might do but what it has done. As already said there is nothing apparent in the act to take it out of the usual rule of construction that it is prospective only." It is clear that when the judgment in question was originally entered (1893), when it was last revived (1903), and when the defendant in it died (1906), its lien was without limit of time as against the heirs and devisees of the defendant. As only three years had elapsed between the death of the decedent and the passage of the act of 1909, we think it clear the lien was not divested, and, therefore, the plaintiff was entitled to payment out of the fund before the heirs and devisees. We are not disposed to advance the decision of any question that must not necessarily be decided under the facts of this case. Therefore, we are not to be understood as deciding, or intimating any opinion upon, the question whether the lien would have been barred if more than five years had elapsed after the passage of the act without a revival of the judgment.

The judgment is reversed and the record is remitted to the court below, with direction to make distribution in accordance with this opinion and the first report of the auditor; the costs of this appeal to be paid out of the fund after payment of the appellant's claim.