# Rankin, Appellant, v. Rinehart.

*Judgment—Lien—Lien against real estate of decedent—Statute of limitations—Statute of repose—Remedy—Act of May 3, 1909, P. L. 386.*

Where a judgment was originally entered in 1903, was revived on May 22, 1908, and the defendant in the judgment died on September 21, 1908, a scire facias to revive issued on July 1, 1915, cannot be sustained, inasmuch as the plaintiff in the judgment had allowed more than five full years after the defendant's death and more than five full years after the passage of the Act of May 5, 1909, P. L. 386, to elapse without attempting to revive the lien of the judgment.

The Act of May 3, 1909, P. L. 386, is an act of repose, affecting the remedy and not the cause of action, and is one that it is competent for the legislature to enact.

Where the lien of a judgment against decedent's estate has been lost by reason of failure to revive it within the proper time, a devisee of the land is not estopped on a scire facias to revive to take defense under the Act of May 3, 1909, P. L. 386, because she made

a verbal promise to the executor that she would pay the decedent's debts, including the judgment in question.

Argued Oct. 27, 1916.   Appeal, No. 311, Oct. T., 1916, by plaintiff, from order of C. P. Franklin Co., Sept. T., 1915, No. 157, making absolute rule to strike off levy in case of J. C. Rankin, Executor of Rebecca McCullough, deceased, to use of J. C. Atkinson, now to use of C. M. Kunkle, v. R. J. Rinehart, Executor of George Barnes, deceased.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Rule to strike off levy.

The case was referred to J. A. Strite, Esq., as master, who reported as follows:

### FIRST.

(a)  On June 19, 1903, a judgment was entered in the Court of Common Pleas of Franklin County, to No. 94 of September Term, 1903, against R. J. Rinehart and in favor of J. C. Rankin, executor of Rebecca McCullough, for the sum of $132.62, by confession of an attorney upon a note dated April 1, 1903.

(b)  On May 22, 1908, the judgment was revived to No. 53 of September Term, 1908, against R. J. Rinehart and George Barnes, terre-tenant, by amicable revival signed by both, the judgment at that time being revived to use of J. C. Atkinson, now to use of C. M. Kunkle, it having on August 8, 1903, been assigned by the original plaintiff to J. C. Atkinson who on April 13, 1904, assigned it to C. M. Kunkle, the present use-plaintiff.

(c)  On May 13, 1915, a scire facias was issued to revive and continue the lien of judgment No. 53 of September Term, 1908, wherein J. C. Rankin, executor of Rebecca McCullough, deceased, to use of J. C. Atkinson, now to use of C. M. Kunkle, was plaintiff, against R. J. Rinehart and George Barnes, terre-tenant.   This writ

was duly returned by the sheriff, served upon R. J. Rinehart and as to George Barnes, nihil habet.

(d) On June 12, 1915, R. J. Rinehart, defendant in said writ, voluntarily appeared and confessed judgment against himself individually in favor of the use-plaintiff, C. M. Kunkle, in the sum of one hundred ninety-seven and 86-100 ($197.86) dollars, with costs.

(e) By amicable scire facias filed July 1, 1915, bearing date June 12, 1915, and signed R. J. Rinehart, executor of George Barnes, deceased, terre-tenant, a judgment of revival of No. 53 of September Term, 1908, was entered to No. 157 of September Term, 1915, in favor of the same use-plaintiff, C. M. Kunkle, and against R. J. Rinehart, executor of George Barnes, deceased, terre-tenant, for the same amount one hundred ninety-seven and 86-100 ($197.86) dollars. On this latter judgment the fi. fa. in question, No. 26 of September Term, 1915, was issued and reached the hands of the sheriff on July 26, 1915, who levied on the real estate involved in this proceeding.

(f) On August 28, 1915, the petition of Nancy Barnes to stay the fi. fa. and set aside the levy was presented and the fi. fa. was stayed.

### SECOND.

(a) The real estate, consisting of a small tract of about two acres, upon which the judgment in question was originally a lien was conveyed by J. C. Rankin, executor of Rebecca McCullough to Roy J. Rinehart by deed dated April 1, 1903, for a consideration of two hundred sixty-five and 25-100 ($265.25) dollars, which deed was recorded August 23, 1906, in Franklin County Deed Book, Vol. 143, page 89. R. J. Rinehart by deed dated the 28th day of May, 1905, recorded in Franklin County Deed Book, Vol. 143, page 90, conveyed the same land to George Barnes. Barnes at the time of purchase of the land by Rinehart from McCullough's executor and at the time of the conveyance by Rinehart to him was in the

employ of Rinehart, who was a farmer owning the farm which the property conveyed to Barnes adjoined. Rinehart bought the property for the purpose of enabling Barnes to obtain a home, took the title in his name and gave the original judgment to secure the unpaid purchase-money. Barnes paid Rinehart the cash advanced by the latter in the purchase of the property and when conveyed by Rinehart to Barnes the property was subject to the lien of the judgment given by Rinehart to McCullough's executor. The judgment was not mentioned in the deed from Rinehart to Barnes.

(b) Barnes died September 21, 1908. His will dated September 7, 1908, probated September 28, 1908, recorded in Franklin County Will Book, Vol. S, page 147, provides for the payment of his debts and devises the remainder of his estate to his wife, Nancy Barnes. Letters testamentary on the estate were granted to Roy J. Rinehart, the executor named in the will and the same person as the original defendant in the judgment. The estate left by Barnes consisted of eighty-three and 47-100 ($83.47) dollars of personal property and the land conveyed to him by Rinehart. A widow's appraisement in the estate of George Barnes was filed November 24, 1908, by which all the personal property was set apart to Nancy Barnes, the widow, and the remainder of her $300 exemption, namely two hundred sixteen and 53-100 ($216.53) dollars was charged upon the real estate. Rinehart, as executor, wanted to sell the real estate and pay the judgment. The widow, Nancy Barnes, preferred not to have the real estate sold and agreed, after a conference with the executor and his attorney, H. H. Spangler, Esq., that she would pay the debts of George Barnes, including the purchase-money judgment which is in controversy. She did, in fact, pay to Rinehart, who acted as her agent in the matter, the amount required to pay the debts of Barnes other than the judgment. She was then advised that the judgment was a lien on the real estate and that the property might be sold in order to pay

it off and that the property would not be hers until the lien was paid.

(c) After this arrangement was made she leased the property to various tenants and has continued to do so until the present time. She insured the property against loss by fire in her name. She gave no written promise to pay the judgment.

## THIRD.

C. M. Kunkle was the owner of the judgment when George Barnes died and has been continually its owner to the present time. It does not appear that he had any knowledge of any understanding on the part of Nancy Barnes to pay the judgment until more than five years after the death of George Barnes and more than five years after May 3, 1909.

### CONCLUSIONS OF LAW :—FIRST.

Inquisition having been waived in the note upon which the original judgment was entered, and the judgment having been confessed by an attorney, thereby making the waiver of inquisition a part of the judgment, an inquisition and condemnation were not prerequisites to the issuance of fi. fa. No. 26 of September Term, 1915, sur judgment No. 157 of September Term, 1915, nor would inquisition and condemnation be necessary in order to proceed with the sale of the real estate in question if the judgment at the time of the issuing of the writ of fi. fa. were a lien on the real estate.

### SECOND.

The real debtor, as between Rinehart and George Barnes, having been Barnes himself, at least after the conveyance by Rinehart to Barnes, Nancy Barnes, the devisee of George Barnes, has no right to compel the

plaintiff to exhaust the property of Rinehart before having recourse to her land if the judgment is a lien on her land.

### THIRD.

The judgment having been revived against the land in question May 22, 1908, Barnes having died September 21, 1908, and the judgment No. 157 of September Term, 1915, against R. J. Rinehart, executor of George Barnes, deceased, terre-tenant having been entered on July 1, 1915, after the lapse of more than five years after the death of George Barnes and five years after the approval of the Act of May 3, 1909, the judgment had lost its lien on the real estate in question and the real estate could not therefore be sold in satisfaction of the judgment.

### FOURTH.

The judgment having lost its lien upon the real estate by the lapse of more than five years from the death of George Barnes and the approval of the Act of May 3, 1909, the revival of the same by R. J. Rinehart, executor of George Barnes, filed July 1, 1915, did not revive the lien upon the land in question.

The court overruled exceptions to master's report and made the rule absolute.

*Error assigned* was in making the rule absolute.

*J. R. Ruthrauff,* with him *J. M. McDowell* and *W. O. Nicklas,* for appellant.—Retrospective laws, generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative.

When judgment was entered the rights of the parties became fixed and definite; there is nothing upon which the remedy could act. The plaintiff had a vested lien

binding the property of the defendant with all its incidents.

With such a lien the legislature could not interfere without violating both Article I, Section 17 of the Commonwealth of 'Pennsylvania, and Article I, Section 10, of the Constitution of the United States: Benner v. Phillips, 9 W. & S. 13; Walker v. Whitehead, 16 Wallace 314; Edwards v. Kearzey, 96 U. S. 595.

Nancy Barnes, as stated above, took this property in the fall of 1908, paid all the debts except the judgment, and the executor of George Barnes took no further steps in the settlement of the estate. Indeed the estate was fully settled—the debts all paid and the property taken by Nancy with the distinct promise to pay this lien. We submit, therefore, that when the Act of 1909 was passed, the estate of George Barnes having been settled and the property taken by the heir, there was no land of the decedent on which this statute could operate.

*Edmund C. Wingerd,* with him *William S. Hoerner,* for appellee, cited: Sohn v. Waterson, 17 Wallace U. S. 596; Mellon's App., 46 Pa. 165; Wilson v. Iseminger, 185 U. S. 55; Brubaker's Est., 59 Pa. Superior Ct. 109; Smith v. Monison, 22 Pick. 430; Korn v. Browne, 64 Pa. 55.

OPINION BY HEAD, J., April 16, 1917:

Although the case at bar is not ruled by. Brubaker's Est., 59 Pa. Superior Ct. 109, the judgment we are compelled to enter here is clearly foreshadowed in the reasoning of the opinion of President Judge RICE in the case cited. The earlier statutes on the subject of the liens of judgments against the lands of deceased debtors were there carefully reviewed and their language and scope, as compared with the Act of May 3, 1909, P. L. 383, pointed out. The marrow of the decision in that case is clearly stated in these excerpts from the opinion. "It is to be presumed that the legislature knew of the construc-

tion that had been given to the earlier acts and intended to abrogate the rule the courts had deduced. This......
is the clear meaning of the Act of 1909. But did the. legislature intend it to have a retroactive effect? Unquestionably, to construe the act as applying to judgments obtained before its passage, where the decedent died after its passage, would not be giving such effect, and doubtless it should be so construed. But it would be giving it a retroactive operation to hold that a lien, which at the time of its passage was, as against heirs and devisees, unlimited as to time, was destroyed if the decedent had died more than five years before its passage, or, that it was converted into a lien of three years' duration if the decedent had died three years before its passage. If anything is clear, it is that the legislature deemed five years the reasonable time within which the holder of the lien should revive it, and it is only by holding that the plaintiff in the judgment in question had five years from the date of the passage of the act within which to revive its lien, that the act could be applied to the lien in question without giving it a retroactive operation.
......It is clear that when the judgment in question was originally entered (1893), when it was last revived (1903), and when the defendant in it died (1906), its lien was without limit of time as against the heirs and devisees of the defendant. As only three years had elapsed between the death of the decedent and the passage of the Act of 1909, we think it clear the lien was not divested, etc."

The material facts of the case at bar are thus stated by the auditor whose careful opinion was adopted by the learned court below: "The important dates are these: May 22, 1908, judgment revived and continued as a lien on the real estate in question; September 21, 1908, George Barnes, owner of the land encumbered by the judgment, died; May 3, 1909, date of passage of the Act of Assembly; July 1, 1915, amicable revival of the judgment entered May 22, 1908." It is thus apparent the

plaintiff in this judgment had allowed more than five full years after the date of the death of the debtor therein and more than five full years after the passage of the Act of 1909 to elapse without attempting to revive the lien of the judgment. There is no room therefore for the discussion of the question whether or not the statute could or should have any retroactive effect. Following our construction of it in Brubaker's Estate, supra, and again holding the legislature intended it to operate but prospectively, its bar has destroyed the lien of the judgment in question.

We cannot excise from the operation of the statute all judgments that had been entered prior to its enactment. The legislative intent is too clearly expressed. We quote the language of the act: "All judgments which at the time of the death of a decedent shall be a lien on his real estate shall continue, etc." Nor is it possible, at this late day, to successfully argue it is not competent for the legislature to enact such a statute. Viewed from the standpoint of the common weal, statutes of limitation are statutes of repose. It is, it always has been, to the interest of the State there should be within some reasonable time, to be defined by the lawmaking power, an end to litigation. The question was fully considered by this court in Shelly v. Dampman, 1 Pa. Superior Ct. 115, where the decisions of the Supreme Court of the United States were reviewed and followed. In Bowden v. The Philadelphia, W. & B. Railroad Company, 196 Pa. 562, the subject of statutes of limitation, operating only on the remedy and not on the cause of action, was again carefully considered and the right of the legislature to enact such statutes was clearly upheld by our own Supreme Court. There remains nothing more for us to say on this branch of the case.

It is urged, however, upon our consideration the present devisee of the land in question is estopped to take defense under the Act of 1909 because she made a verbal promise to the executor of her husband's will she would

pay his debts, including the judgment in question. We cannot determine in this case what right of action, if any, would result from a breach of such a promise, or what would be the appropriate remedy to enforce such a right of action. We have before us a proceeding in rem. If by force of the law of the land the judgment in question had lost its lien as against the real estate it formerly bound, the execution process of the courts could not be successfully used to enforce the lien that once existed but had been lost through the failure of the plaintiff in the judgment to act within the reasonable time fixed by the legislature.

The assignments of error are overruled and the decree of the court below dismissing the exceptions to the auditor's report is affirmed. The appeal is dismissed at the cost of the appellant.