## Jenkins Trust

*John G. Callender*, for accountant.

*John J. Curran*, for Commonwealth.

GANGLOFF, P. J., February 24, 1959.—From the evidence submitted and the record in the matter, we find and decree as follows:

The first and final account of the executor of the estate of J. Franklin Jenkins, who died on July 12, 1955, was adjudicated and a decree of distribution entered on September 24, 1956. In this latter decree there is included, as part thereof, an award of cash and securities, in the total amount of $58,081.32, to The Miners National Bank of Pottsville, in trust for

Mrs. Tillie Becker, as in the will provided. The beneficiary of the trust died on November 2, 1958, whereupon, in due course, the trustee filed an accounting of its administration of the trust fund. That account is here for adjudication.

The account shows balance on hand as follows: Personalty principal, $53,515.38.

In his will and codicil decedent, J. Franklin Jenkins, gave his residuary estate to the accountant, in trust:

"To invest, reinvest and hold the same in approved securities and collect the rents, issues and profits therefrom; To pay each month from either the income or principal sum an amount sufficient to properly maintain and provide for food, clothing, shelter and medical expenses of my Aunt, Mrs. Tillie Becker, during the term of her natural life."

The account shows total income collected in the amount of $5,384.85, that all of the income was expended for the purposes in the will provided and that $826.30 of principal was expended for the same purposes.

The will and codicil thereto in this case provides that upon the death of Mrs. Tillie Becker the "trust fund be dissolved and liquidated and the remaining funds be disposed of in the following manner: That any amount above such amount as my Aunt, Tillie Becker, shall have upon her decease to provide for her funeral expenses and suitable tombstone shall be paid from this fund . . . It is my desire that if there are remaining funds of the trust fund that they be disposed of as follows:

"$1,000 to Earle H. Wildermuth
"$2,000 to Mrs. Ann Sargent Muncy
"$2,000 to Rolland W. Rodgers
"$5,000 to Hannah G. Van Voorhis (now Vandergrift)

"$1,000 to Lloyd C. Steidle

"$1,000 to Florence Glover

"$1,000 to Robert Wylie

"$10,000 to Mary E. Harvey

"Residuary estate to Schuylkill County Branch of the American Cancer Society, Pennsylvania Division, Inc.

"The Salvation Army of Pottsville, Penna., and the King's Daughters Society, of Pottsville, Pennsylvania, share and share alike."

All of the individual remaindermen named in the will and codicil appear to be living. . . .

An appraisement for and an assessment of transfer inheritence tax in this estate was filed in the register's office on October 13, 1955. The net taxable estate was determined to be $58,304.13. The taxing authorities appraised the entire estate, as is required (Cochrane's Estate, 342 Pa. 108; Kritz Estate, 387 Pa. 223), and the life estate was appraised and assessed separately and the tax thereon was paid. Life estates and remainder estates must be appraised separately: Constable's Estate, 299 Pa. 509; Reynolds Estate, 359 Pa. 616. The tax on the remainder estate was not paid by the executor and that tax remained open and unpaid at the time of death of the life tenant. As of January 12, 1959, the tax on the remainder estate was assessed in the total amount of $7,965.37. Of this amount the accountant paid $2,939.94, leaving a balance of $5,025.43. Whether or not this balance is due and payable is a question concerning which the Commonwealth, on the one hand, and the trustee accountant, on the other, disagree. The latter contends that the only tax due on the remainder estate in this case is the tax on the bequests of cash, amounting to $23,000, to individuals, and that there is no tax due and payable on the residuary remainder estate given in the will in

the form of charitable bequests. In support of this latter contention counsel for the trustee cites the provisions of the Act of May 28, 1956, P. L. 1757, 72 PS §2301.1, amending the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521. This amendment provides, so far as here applicable, that:

"No transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise, to persons, corporations and organizations where the transfer is by will . . . To or for the use of any corporation . . . organized and operated, exclusively, for religious, charitable, scientific, literary or educational purposes . . . no part of the net earnings of which inures to the benefit of any private stock holder or individual."

That the organizations entitled to the residuary remainder estate in this case are charitable institutions, as defined in the amendatory Act of May 28, 1956, is not questioned; they are in fact such institutions. The sole question is whether the amendment exempts from transfer inheritance tax the charitable organizations in the will named as remaindermen notwithstanding testator died and the will was probated almost two years before the amendment became effective.

Perhaps a strictly legalistic view would require an appeal from the appraisement and assessment of the tax rather than to treat the matter as a disputed claim on the part of the Commonwealth against decedent's estate. Notwithstanding this observation, we may accomplish the same objective by taking action upon the claim in the form presented. We shall dispose of the issue upon that theory.

That, in the absence of the amendment of June 1, 1957, the entire remainder estate would be subject to the tax at the rate of 15 percent upon the value of the

property passing in possession to the remaindermen upon the death of the life tenant is conceded.

The inheritance tax " 'is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself' ": Graham Estate, 358 Pa. 383.

Where, as is the case here, there is a life estate, the Transfer Inheritance Tax Act of 1919, as amended, provides, section 3, that:

"Where there is a transfer of property by a devise, descent, bequest, gift, or grant, liable to the tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates . . . the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate . . . The tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid . . .

"Provided, that in case of sale and conveyance or mortgage of real property, if the fiduciary or other person making such sale or mortgage or any person interested shall enter into security for the payment

of the tax to the satisfaction of the Department of Revenue, the real property so sold or mortgaged shall be free of the lien of the tax."

The Transfer Inheritance Tax Act in dealing with life estates and estates in remainder clearly subjects a decedent's estate to the tax and then goes on to make a distinction between a life estate and an estate in remainder. In the first place the entire estate must be appraised for tax purposes and then the appraiser must assess the tax on the life estate and separately on the remainder estate: Constable's Estate, supra. In the second place, the act then deals with the question of the payment of the tax so assessed. As to the tax on the life estate, that is payable within 12 months without being subject to the penalty. As to the tax on the remainder estate, the remainderman may choose one of two courses, namely, he may pay the tax within the period fixed for payment of the tax on the life estate, or he may wait until he obtains actual possession, upon the death of the life tenant, at which time he must pay the tax upon the then value of the estate. All of which appears to indicate rather clearly that the legislature intended to make the estate subject to the tax upon the death of testator on the one hand and on the other to allow some latitude in the time when payment is to be made.

In other words, upon the death of testator, where, as here, there is a life estate with remainder over to named and clearly identified beneficiaries, the Commonwealth becomes entitled to "a distributive share of the estate" (Graham Estate, supra) but may be required to wait for that share until the death of the life tenant if the remainderman elects to pay the tax at that time. The Commonwealth's right to receive an inheritance tax arises, if at all, immediately on the death of decedent: Commonwealth v. Presbyterian

Hospital, 287 Pa. 49. See also Easby's Estate, 285 Pa. 60.

In determining whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately or as not effective in possession or enjoyment until at or after the death of the donor, the criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor, but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime: Glosser Trust, 355 Pa. 210. See also Denniston's Estate, 325 Pa. 453; Commonwealth v. Linderman's Estate, 340 Pa. 289. Of course, in the present case, the donor (testator) parted with complete title and ownership upon his death and that marks the time when the Commonwealth's right to receive an inheritance tax arises.

That the tax on the remainder estate, an excise on the privilege of inheritance, is a continuing obligation due the Commonwealth clearly appears in the provision relating to real estate, namely: "The tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid," and if a sale is made in the meantime security must be entered for payment of the tax in order that the real estate sold may be conveyed clear of the lien of the tax. Here again it clearly appears that the tax is a fixed obligation whereas only the time of payment may be deferred until the death of the life tenant.

The tax being a fixed obligation, as above pointed out, does the amendment of June 1, 1957, void that obligation? In other words, are the provisions of the amendment retroactive in the sense that by reason of these provisions a charitable organization as remainderman is now relieved from payment of that obligation? Certainly, the amendment does not so provide

in words. On the contrary, the amendment clearly provides that its provisions shall become effective on June 1, 1957.

As already pointed out, the tax in this case is in legal effect a distributive share of the estate due the Commonwealth. That is a vested interest which arises, under statutory law and the authorities hereinabove referred to, upon the death of decedent. A statute will not be given a retroactive effect when such effect would impair or destroy rights already vested: Dillon v. Dougherty, 2 Grant 99; Hartle v. Long, 5 Pa. 491; Shonk v. Brown, 61 Pa. 320; Keene's Appeal, 64 Pa. 268; Alter's Appeal, 67 Pa. 341; Crawford Estate, 362 Pa. 458; Warden Trust, 382 Pa. 311. Moreover, even if it may be conceded that the legislature may impair or destroy a vested right held by the Commonwealth, the intent to do so must be clearly stated, which is not the case here. See McCabe v. Emerson, 18 Pa. 111; Neff's Appeal, 21 Pa. 243.

In view of the foregoing discussion we find that the claim of the Commonwealth for an inheritance tax of $5,025.43 upon the gift in remainder to the charitable organizations hereinbefore identified is a valid claim and the claim therefore is allowed.